**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION**

| | | |
|---|---|---|
| **OSCAR SMITH,** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | |
| **v.** | ) | **No. 3:99-cv-0731** |
| | ) | **Judge Trauger** |
| **WAYNE CARPENTER, Warden,** | ) | |
| | ) | **DEATH PENALTY CASE** |
| **Respondent.** | ) | |

## MEMORANDUM

The petitioner, Oscar Franklin "Frank" Smith, was convicted and sentenced to death for the murder of his estranged wife and two stepsons, based on evidence including the following:

> At approximately 11:20 p.m. on Sunday, October 1, 1989, the police received a 911 call from Judy Smith's home. On the tape of that call (later technically enhanced for trial) a victim shouts, among other things, "Frank, no. God, help me!" before the call abruptly ends. Officers arrived at the house five minutes later, heard nothing, received no answer at the front door, and considered it a false call. The following afternoon, the bodies of Judy Smith, Frank Smith's estranged wife, and his two stepsons, Jason and Chad, were found dead. . . .

> According to the medical examiner, the three victims died at least twelve hours before they were found. . . . Police found a bloody hand print on the sheet next to Judy's body. Sergeant Johnny Hunter, who examined the print, testified that it matched Smith's left hand, which was missing the two middle fingers.

*Smith v. Bell*, 381 F. App'x 547, 548 (6th Cir. 2010), *cert. granted, judgment vacated sub nom.*

*Smith v. Colson*, 566 U.S. 901 (2012). The petitioner originally sought habeas corpus relief pursuant to 28 U.S.C. § 2254 on August 5, 1999. (DE #1.) The court held an evidentiary hearing on November 24, 2003, on the petitioner's claims that trial counsel was ineffective at the guilt phase of trial in connection with their investigation of the victims' time of death, the bloody hand print on the sheet, and a knife found under the victims' home.[1] (DE ##116, 179.) This court denied the petition on September 30, 2005 (DE ##201, 202), and the United States Court of Appeals for the Sixth Circuit affirmed the denial in June 2010. *Smith v. Bell*, 381 F. App'x 547

---

[1] Both the hearing and the court's previous disposition of this case pre-date the Supreme Court's decision in *Cullen v. Pinholster*, 563 U.S. 170 (2011), by several years.

(6th Cir. 2010). The case has since been remanded to this court for further consideration in light of the intervening decisions in *Martinez v. Ryan*, 566 U.S. 1 (2012), and *Trevino v. Thaler*, 133 S. Ct. 1911 (2013), which now clearly apply to habeas petitions arising in this state. *Sutton v. Carpenter*, 745 F.3d 787 (6th Cir. 2014). The court has permitted limited discovery on the claims that were potentially subject to reconsideration (DE ##250, 265, 281, 294), and the parties have fully briefed the remaining issues and the petitioner's request for another evidentiary hearing. (DE ##297, 298, 299.)

The court will deny petitioner's request for an evidentiary hearing and dismiss this matter for the reasons set forth below. It is unnecessary at this stage for the court to repeat its lengthy description of the evidence and legal analysis set forth in its previous memorandum opinion (DE #201), but it does reference and rely on that analysis as necessary below.

## I.   THE *MARTINEZ* EXCEPTION

Ordinarily, when a habeas petitioner has failed to fully exhaust a claim in state court and is now unable to do so because of a statute of limitations or other state procedural rule, the claim is considered to be procedurally defaulted. *Coleman v. Thompson*, 501 U.S. 722, 752–53 (1991). Except in cases where the petitioner can establish that he is actually innocent, federal habeas review of the merits of defaulted claims is prohibited unless the petitioner demonstrates cause for, and prejudice from, his default. *Alley v. Bell*, 307 F.3d 380, 386 (6th Cir. 2002). At the time the court denied this petition in 2005, "the law [was] firmly settled that ineffective assistance of counsel in state post-conviction proceedings can never establish cause, because there is no constitutional right to effective assistance of counsel in such collateral proceedings in the first place." (DE #201, at 41–42 (citing *Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987), *Coleman*, 501 U.S. at 742–53, and *Ritchie v. Eberhart*, 11 F.3d 587, 590 (6th Cir. 1993)).) This court applied that rule in holding that several of the petitioner's claims were procedurally defaulted and not subject to review on habeas corpus. (DE #201.)

Several years after that decision, the Supreme Court held in *Martinez* that, in certain circumstances, "[i]nadequate assistance of counsel at initial-review collateral proceedings may establish cause for a prisoner's procedural default of a claim of ineffective assistance at trial," and the Sixth Circuit has held that this *Martinez* exception applies in Tennessee. *Martinez*, 566 U.S. at 9; *Sutton v. Carpenter*, 745 F.3d 787, 795–96 (6th Cir. 2014). To overcome default under *Martinez*, a petitioner must show that post-conviction counsel was ineffective during the "initial-review collateral proceeding," *Martinez*, 566 U.S. at 16, and that the underlying ineffective-assistance-of-trial-counsel [IATC] claim is a "substantial one, which is to say that the prisoner must demonstrate that the claim has some merit." *Id.* at 14.

The Sixth Circuit has provided the following framework to evaluate claims under *Martinez*:

> As to these claims, the district court should determine . . . : (1) whether state post-conviction counsel was ineffective, . . . and (2) whether [Petitioner's] claims of ineffective assistance of counsel were "substantial" within the meaning of *Martinez*, *Sutton*, and *Trevino*. Questions (1) and (2) determine whether there is cause. The next question is (3) whether [Petitioner] can demonstrate prejudice. Finally, the last step is: (4) if the district court concludes that [Petitioner] establishes cause and prejudice as to any of his claims, the district court should evaluate such claims on the merits. . . . [E]ven "[a] finding of cause and prejudice does not entitle the prisoner to habeas relief. It merely allows a federal court to consider the merits of a claim that otherwise would have been procedurally defaulted." *Martinez*, [566 U.S. at 17].

*Atkins v. Holloway*, 792 F.3d 654, 660 (6th Cir. 2015) (some internal citations omitted).

Whether post-conviction counsel was constitutionally ineffective is necessarily connected to the strength of the claim he failed to raise, so "in many habeas cases seeking to overcome procedural default under *Martinez*, it will be more efficient for the reviewing court to consider in the first instance whether the alleged underlying ineffective assistance of counsel was 'substantial' enough to satisfy the 'actual prejudice' prong of *Coleman*." *Thorne v. Hollway*, No. 3:14-CV-0695, 2014 WL 4411680, at *23 (M.D. Tenn. Sept. 8, 2014), *aff'd sub nom. Thorne v. Lester*, 641 F. App'x 541 (6th Cir. 2016).

3

All federal ineffective-assistance claims are subject to the highly deferential two-prong standard of *Strickland v. Washington*, 466 U.S. 668 (1984), which asks: (1) whether counsel was deficient in representing the defendant; and (2) whether counsel's alleged deficiency prejudiced the defense so as to deprive the defendant of a fair trial. *Id.* at 687. To satisfy the first prong, a petitioner must establish that his attorney's representation "fell below an objective standard of reasonableness," and must overcome the "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that . . . the challenged action 'might be considered sound trial strategy.'" Id. at 688, 689. The "prejudice" component of the claim "focuses on the question of whether counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair." *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993). The prejudice prong, under *Strickland*, requires showing that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*

## II.  NEW EVIDENCE AND *MARTINEZ*

### A.  Claims Not Raised in State Court

The respondent insists that the restrictions on the presentation of new evidence during federal habeas proceedings in § 2254(e)(2)[2] apply to the petitioner's defaulted claims under

---

[2] That provision, in context, states:

(e)(1) In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

(2) If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that--

(A) the claim relies on--

reconsideration pursuant to *Martinez*, and that this court's review is confined to the state court record. (DE #298, at 4–12.) The respondent devotes much of his brief to arguing that the petitioner's IATC claims are not based on new law or facts that could not have been presented during his post-conviction proceedings. No one disputes those circumstances; indeed, the very nature of the *Martinez* analysis is that it only applies to claims that post-conviction counsel could have timely raised in state court but failed to.[3]

For *Martinez* to have any meaning at all, a petitioner seeking to pursue a defaulted IATC claim must be able to present a federal court with evidence of his post-conviction counsel's ineffectiveness and of the substantial nature of his underlying claim – evidence that, by the very nature of the circumstances, was never presented in state court. Such new evidence goes to the issue of cause and prejudice to overcome the default, and "[w]hen a petitioner asks for an evidentiary hearing on cause and prejudice, neither section 2254(e)(2) nor the standard of cause and prejudice that it replaced apply." *Henry v. Warden, Georgia Diagnostic Prison*, 750 F.3d 1226, 1231–32 (11th Cir. 2014); *accord, e.g., Cristin v. Brennan,* 281 F.3d 404, 413 (3d Cir. 2002) ("We conclude that the plain meaning of § 2254(e)(2)'s introductory language does not preclude federal hearings on excuses for procedural default at the state level, and therefore

> (i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
>
> (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and
>
> (B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

[3] *Martinez* involved IATC claims that had been deemed defaulted because the petitioner's original post-conviction attorney had never raised the claims at all, and his later attempt to raise them was rejected as untimely by the state courts. *Martinez*, 566 U.S. at 6. Specifically, the claims Martinez had been barred from pursuing were that his trial counsel should have objected to expert testimony or called an expert witness in rebuttal and should have pursued an exculpatory explanation for his DNA on the victim's nightgown. *Id.* at 7. After determining that attorney error at post-conviction could establish cause for the default of those claims, the Supreme Court remanded for lower courts to decide whether Martinez's post-conviction counsel had been ineffective, whether his IATC claims were substantial, and whether he had been prejudiced. *Id.* at 18.

the District Court did not err in conducting such a hearing in Cristin's case."); *Mitchell v. Hill*, No. CIV 06-844-BR, 2009 WL 2949330, at *3 (D. Or. Sept. 9, 2009) ("Generally, 28 U.S.C. § 2254(e)(2) limits a habeas petitioner's ability to expand the record to the same extent that it limits the availability of an evidentiary hearing. *Holland v. Jackson*, 542 U.S. 649, 652 (2004). However, § 2254(e)(2) does not apply to expansion of the record to overcome a procedural default. *Buckman v. Hall*, 2009 WL 204403 *1 (D.Or. 2009) (citations omitted). In such a case, Rule 7 grants the district court discretion to expand the record. *Vasquez v. Hillery*, 474 U.S. 254, 258 (1986)."). The petitioner's assertion that he can overcome default pursuant to *Martinez* is simply not a "claim" to which § 2254(e)(2) would apply. Rather, it is a procedural matter in which the court has the discretion to determine whether and to what extent to hear new evidence. *See Segundo v. Davis*, 831 F.3d 345, 351 (2016) (holding that the district court did not abuse its discretion in denying a hearing to determine whether claim satisfied *Martinez* because the record contained sufficient facts to make that determination).

None of the cases on which the respondent relies convinces the court otherwise. The Fifth Circuit in *Newbury v. Stephens*, 756 F.3d 850 (5th Cir. 2014), observed that the respondent in that case raised § 2254(e)(2) as a bar to the petitioner's new evidence, but it did not reach that issue. Instead, the Fifth Circuit found that the district court had properly rejected the petitioner's claim even after thorough review of the petitioner's newly presented evidence. *Id.* at 874 ("Because the district court addressed the merits of Newbury's IATC claim, including the evidence presented for the first time in federal court, it is not arguable but that Newbury has already received all of the relief available to him under the authority of *Martinez* and *Trevino*. Considering all of Newbury's evidence, including that presented for the first time in federal court, reasonable jurists would not debate the district court's decision that Newbury's IATC claim lacks merit."). The Tenth Circuit did not even mention § 2254(e) in *Carter v. Bigelow*, 787 F.3d 1269 (10th Cir. 2015). It held that *Cullen v. Pinholster*, 563 U.S. 170 (2011), prevented it from

considering new evidence on the petitioner's claim that counsel was ineffective with regard to mitigation evidence and noted that *Martinez* did not apply, because the claim was not defaulted but had been rejected on its merits in state court. *Carter*, 787 F.3d at 1290 n.19. Similarly, in an unreported case on which the respondent relies, the District Court for the Northern District of Ohio held that *Martinez* did not entitle the petitioner to further develop the record in a case where the underlying claim was exhausted and rejected on the merits in state court and was not an IATC claim. *Hill v. Anderson*, No. 4:96 CV 00795, 2012 WL 2826973 (N.D. Ohio July 10, 2012). Thus none of these cases supports the respondent's argument that § 2254(e) prohibits new evidence in support of an asserted right to review of a defaulted claim pursuant to *Martinez*.

Of the four cases the respondent cites, only the unreported decision by the District of South Carolina in *Fielder v. Stevenson*, No. 2:12-cv-00412, 2013 WL 593657 (D. S.C. Feb. 14, 2013), actually held that § 2254(e) limits the admission of new evidence in the context of a *Martinez* analysis. But even *Fielder* said that the bar on new evidence applies only to evidence about the underlying claim, and not to evidence that would establish cause and prejudice under *Martinez*. *Fielder* at *3 ("[C]ourts have held that § 2254(e)(2) does not similarly constrain the court's discretion to expand the record to establish cause and prejudice to excuse a petitioner's procedural defaults. In such cases, the court retains its discretion to expand the record to allow a petitioner to establish cause and prejudice to excuse a petitioner's procedural defaults.") (citations omitted). But some evidence about the merit of the underlying IATC claim is necessarily relevant to the *Martinez* analysis itself, which requires a petitioner to demonstrate that the claim is substantial, "which is to say that the prisoner must demonstrate that the claim has some merit," *Martinez*, 566 U.S. at 14; *Carpenter v. Davis*, No. 3:02-CV-1145-B-BK, 2017 WL 2021415, at *3 (N.D. Tex. May 12, 2017) ("The evidence required to show . . . that the claim of ineffective assistance of trial counsel is substantial and, therefore, comes within the exception to procedural bar created in *Martinez*, will likely be much of the same evidence needed to prove

7

the merits of the underlying claim."). And again, because the very nature of a claim subject to *Martinez* analysis is that it was never presented in state court, the *Martinez* exception would be a farce if a petitioner could succeed in establishing cause and prejudice to overcome the default of a substantial claim but then be barred from proving the claim. Accordingly, to the extent that the petitioner offers new evidence in connection with his never-before-raised IATC claims, the court properly considers that evidence.

B. Claims Raised in State Court

The respondent is correct, however, with regard to claims that were raised in state court, which petitioner essentially seeks to have this court rehear with new evidence. When the court authorized the petitioner to conduct discovery in this case more than two years ago, it commented on a lack of clarity in the case law about whether the *Martinez* exception is limited to claims that were never heard at all in state court, as was the case in *Martinez*, or is broad enough to encompass claims that were raised but then (allegedly) ineffectively prosecuted by post-conviction counsel. (DE #250, at 4–7.) Accordingly, it withheld judgment on that issue and permitted the petitioner to conduct the requested discovery but cautioned that "the court may ultimately agree with the respondent that [such claims] are not subject to reconsideration on the basis of *Martinez*." (*Id.* at 7.) Today it does so agree, after review of the parties' briefs and of the current state of the pertinent case law. A federal habeas court's review of "any claim that was adjudicated on the merits in State court proceedings" is limited to the evidence presented in the state proceeding, 28 U.S.C. § 2254(d); *Pinholster*, 563 U.S. at 181–82, and the *Martinez* exception to enable review of procedurally defaulted claims simply does not apply in such circumstances.

There are decisions still standing even within this circuit to the contrary, *see Haight v. White*, No. 3:02-CV-P206-S, 2013 WL 5146200, at *8 (W.D. Ky. Sept. 12, 2013) ("*Martinez* is clear that errors by post-conviction attorneys in collateral proceedings that rise to the level of

8

ineffective assistance of counsel may be sufficient to establish cause for a procedural default of an ineffective assistance of trial counsel claim. That is so whether the post-conviction attorney entirely failed to raise the claim or raised the claim, but did so in a manner that was insufficient to meet prevailing professional standards."), but the court is convinced that the weight of authority, particularly in the Sixth Circuit, is that *Martinez* does not apply to claims that were raised and reviewed on their merits in state court. To his credit, the petitioner concedes that *Martinez* review of such claims is foreclosed in this circuit, citing *Moore v. Mitchell*, 708 F.3d 760 (6th Cir. 2013), but asserts that *Moore* was wrongly decided and that the court should nevertheless apply *Martinez* to allow new evidence and further consideration of the IATC claims he alleges post-conviction counsel presented ineffectively. (DE #297, at 30–31.) The relevant portions of *Moore* are as follows:

> Moore claims that trial counsel was ineffective at mitigation because Moore's expert witness gave damaging testimony during cross examination. Moore argues that this would not have happened if trial counsel been prepared and known how the expert was going to testify.
>
> . . .
>
> On direct appeal, proceeding with different counsel before the Ohio Supreme Court, Moore raised the claim that his trial counsel did not prepare adequately based on this exchange. There was no evidence before the state court other than the trial transcript. The court denied his claim, finding that Moore had failed to show deficient performance and failed to show prejudice. On state post-conviction relief, Moore asked for an evidentiary hearing and/or discovery, but the court denied his request and denied relief.
>
> . . .
>
> Moore is not asking that we afford a *Martinez*-like review of a procedurally defaulted claim, but rather that we turn *Martinez* into a route to circumvent *Pinholster*. Moore's argument is not merely that *Martinez* permits us to review the merits of his claim; we already do that below, albeit through the lens of AEDPA deference, and *Martinez* is irrelevant to that analysis. Instead, he argues that we should remand to allow factual development of his allegation that collateral counsel was ineffective, and then, if collateral counsel is found ineffective on that newly developed record, permit that record to inform his ultimate claim for relief regarding whether trial counsel was ineffective. In other words, he wants this Court to grant him permission to obtain new facts to challenge the Ohio Supreme Court's rejection of his ineffective assistance of trial counsel claim. As explained above, though, *Pinholster* plainly bans such an attempt to obtain review of the

merits of claims presented in state court in light of facts that were not presented in state court. *Martinez* does not alter that conclusion.

*Id.* at 778, 779, 785 (citations omitted).   As a case in which the petitioner's IATC claim was heard on direct appeal and a post-conviction hearing was denied, *Moore* presented a slightly different circumstance than this case, but it still stands for the proposition that, once a state court has heard a claim, no matter how undeveloped it was, *Martinez* does not apply.

The Sixth Circuit's more recent decision in *West v. Carpenter*, 790 F.3d 693 (6th Cir. 2015), is more similar to the facts of this case.   Stephen Michael West, another Tennessee death row inmate, sought reconsideration of a previously rejected IATC claim pursuant to *Martinez* and asserted that his post-conviction counsel had been ineffective in handling the claim:

> The first occasion for West to raise his conflict-of-interest ineffective-assistance claim was the initial-review post-conviction proceeding before the Criminal Court of Union County.  West argues on appeal that his conflict-of-interest claim was procedurally defaulted at that stage . . .. West does not argue that post-conviction trial counsel failed to raise the conflict-of-interest claim. . . .  Instead, West contends that post-conviction trial counsel was ineffective because "counsel never advanced the proper federal standard" to analyze a conflict-of-interest claim.
>
> . . .
>
> Post-conviction trial counsel's failure to ask for an inapplicable standard was not ineffective assistance. Second, and more importantly, to the extent that post-conviction trial counsel was ineffective, that ineffectiveness at trial could not have caused *procedural default*. Despite West's oblique presentation of the conflict-of-interest claim, the post-conviction trial court identified the claim and denied it on the merits. Even if the post-conviction trial court had ruled erroneously, and its error were traceable directly to counsel's deficient advocacy, the conflict-of-interest claim would not have been *procedurally defaulted* at the post-conviction trial proceeding because West retained the right to preserve the claim by appealing.
>
> When the state court denies a petitioner's ineffective-assistance claim on the merits, *Martinez* does not apply.

*Id.* at 698–99. *West* does not cite or discuss *Moore*, but it reaches the same conclusion – that *Martinez* does not apply where a claim was raised in state court – this time in a case where the claim was raised at post-conviction.

In *West*, the allegedly deficient performance by post-conviction counsel concerned his legal argument, but this court is persuaded that the prohibition against using *Martinez* to simply relitigate or reinforce a claim that was rejected in state court applies equally where post-conviction counsel failed to submit evidence. In *Escamilla v. Stephens*, 749 F.3d 380 (5th Cir. 2014), a capital habeas petitioner argued that the federal court should consider his new evidence in support of a claim that trial counsel failed to investigate and present mitigating evidence pursuant to *Martinez*, because "evidentiary shortcomings" in the state court record were caused by ineffective assistance by his state habeas counsel. *Id.* at 394. State habeas counsel had presented evidence, which the sentencing jury never heard, of the petitioner's troubled and abusive childhood, the negative role models in his family, and his substance abuse problems, but the state court held that he had not established deficient performance or prejudice and rejected the claim on its merits. *Id.* at 385–86, 391. At federal habeas, the petitioner submitted additional evidence of abuse within his family, his extended family's criminal history, and affidavits from two of the jurors who sentenced him and "argued that under *Martinez*, he [was] entitled to present and have a court consider the evidence submitted to the federal habeas court which was not before the state habeas court due to state habeas counsel's failures." *Id.* at 385. The Fifth Circuit rejected that argument:[4]

> We conclude that *Martinez* does not apply to claims that were fully adjudicated on the merits by the state habeas court because those claims are, by definition, not procedurally defaulted. Thus, once a claim is considered and denied on the merits by the state habeas court, *Martinez* is inapplicable, and may not function as an exception to *Pinholster*'s rule that bars a federal habeas court from considering evidence not presented to the state habeas court.

---

[4] It is noteworthy that the Fifth Circuit rejected Escamilla's efforts to present new evidence pursuant to *Martinez*, even though it found the reasonableness of the state court's rejection of the underlying claim was sufficiently debatable to warrant a certificate of appealability. *Escamilla*, 749 F.3d at 391–95.

*Id.* at 394–95 (internal citations omitted). More recently, the District Court of South Dakota reached the same conclusion under similar circumstances:

> By comparison, Rhines's case bears little resemblance to *Martinez*. Unlike in *Martinez*, Rhines's initial-review collateral proceeding counsel asserted that Rhines's trial attorneys were ineffective. Unlike in *Martinez*, because Rhines's ineffective assistance claims were raised at the necessary time, they were not procedurally defaulted. Unlike in *Martinez*—and perhaps most importantly—Rhines received a state court adjudication on the merits of his ineffective assistance claims. *See Martinez*, 566 U.S. at 10–11 (explaining that "if counsel's errors in an initial-review collateral proceeding do not establish cause to excuse the procedural default in a federal habeas proceeding, no court will review the prisoner's claims."). Thus, the critical rationale for the "narrow exception" of *Martinez* is lacking from Rhines's case. *Cf. Arnold v. Dormire*, 675 F.3d 1082, 1087 (8th Cir. 2012) ("Thus, unlike Martinez, Arnold has already had his day in court[.]").
>
> . . .
>
> In substance, Rhines's argument is that his habeas attorneys should have litigated his ineffective assistance claims differently. What Rhines seeks is another opportunity to present his ineffective assistance claims, this time with more evidence and different arguments that could have been made before. But Rhines's position would transform the "narrow exception" of *Martinez* into a limitless chasm that would nullify every purpose Congress had when it enacted AEDPA.

*Rhines v. Young*, No. 5:00-CV-05020-KES, 2016 WL 614665, at *8 (D.S.D. Feb. 16, 2016); *see also Henderson v. Carpenter*, 21 F.Supp.3d 927, 933 (W.D. Tenn. 2014) (holding that "*Martinez* does not allow Petitioner to circumvent *Pinholster* and allow consideration of evidence that was not developed and presented in the state courts," despite the petitioner's argument that it was "'irrational' to distinguish failing to properly assert a federal claim and failing to properly develop the claim in state court").

Accordingly, the court will not reconsider pursuant to *Martinez* any claims that were adjudicated on the merits in state court or consider any new evidence offered in support of them.

III.  APPLICATION TO THE PETITIONER'S CLAIMS

The petitioner groups his claims for *Martinez* relief into four categories of related claims from his Amended Petition, which is how the court will address them.[5] (DE #297, at 10.)

> A.  Petitioner's Claim That "Trial Counsel Was Ineffective For Failing To Investigate Fingerprint Evidence And Other Evidence From The House To Secure Oscar Smith's Acquittal And Failed To Effectively Cross-examine Prosecution Witness Johnny Hunter (Amended Petition ¶¶8b4, 8c1, 8c5, 8c6, 8c10, 8c11, 8e3)."

In Claim 8b4b of his Amended Petition, the petitioner claimed that trial counsel were ineffective for failing to investigate and present evidence that there were lights on at the victims' home when police arrived around 11:30 p.m. after the 911 call, but the lights were off when the bodies were found the next afternoon, which he said proves that the victims were still alive after the police were there. (DE #18, at 5.)  In Claims 8b4c and 8c11, the petitioner alleged that trial counsel were ineffective for failing to investigate and present proof that the police heard no noise from the house shortly after the 911 call, but a hair dryer was running in the house when the bodies were discovered the next afternoon, which he said also proves that the victims were still alive the morning after the 911 call. (DE #18, at 5, 7–11.)  The petitioner raised these same claims at post-conviction, and this court previously addressed their merits as exhausted claims and found that the state court's rejection of them was not unreasonable. (DE #14, Add. 12, Vol. 1, Verified Amended Petition For Post Conviction Relief at 7–8; DE #201, at 23 n.8, 24 n.10, 76–80.)  *Martinez* does not provide any basis to reconsider these exhausted claims, for the reasons explained in section II.B, above.

In Claims 8b4a and 8c10, the petitioner asserted that an alarm clock that was set for 5 a.m. but was not ringing when the bodies were found indicates that the victims were killed

---

[5] In a footnote, the petitioner has also preserved a claim that *Martinez* authorizes reconsideration of several defaulted claims of ineffective assistance of appellate counsel. (DE #297, at 31 n.8.)  As the petitioner acknowledges, however, that position is expressly foreclosed by *Davila v. Davis*, 582 U.S. _____, 137 S. Ct. 2058 (2017). *See also Hodges v. Colson*, 727 F.3d 517, 531 (6th Cir. 2013) ("Under *Martinez*'s unambiguous holding our previous understanding of *Coleman* in this regard is still the law – ineffective assistance of post-conviction counsel cannot supply cause for procedural default of a claim of ineffective assistance of appellate counsel.").

sometime after 5 that morning, rather than the previous night, and that trial counsel were ineffective for failing to investigate and present that evidence. (DE #18, at 5.)   The court previously determined that these claims were defaulted by not being raised in state court. (DE #201, at 23, 24, 77 n.37.)   However, these claims go to the petitioner's overarching argument that counsel should have challenged the prosecution's theory of the time of the victims' death, which was litigated at post-conviction in the context of the claims about the lights and the hair dryer discussed above, and about which this court has already held a full evidentiary hearing. As the court previously held, the petitioner cannot establish that he was prejudiced by counsel's failure to challenge the time of death, because his own expert medical examiner agreed with the trial testimony of the prosecution's medical examiner to the effect that the condition of the bodies was consistent with death occurring at 11:30 the night of October 1. (DE #201, at 77–78.)   Moreover, defense counsel testified at this court's hearing to the effect that he made a strategic decision not to contest the time of death because the defense team believed they could not overcome the persuasiveness of the 911 tape on that point and thought pursuing an alibi defense was the better course. (See DE #201, at 112–113.)   This court determined that no prejudice arose from that concession: "[G]iven the impact of the 911 tape, the court concludes that most reasonable jurors would have perceived a challenge to the time of death . . . unpersuasive. . . . From the foregoing, and the record as a whole, the court concludes that, although the defense might have investigated/challenged the prosecution's theory as to the time of death, the petitioner has not demonstrated that he was prejudiced by defense counsels' tactical decision not to do so." (DE #201, at 114.)   That conclusion applies equally to the alarm clock claim.   Accordingly, the petitioner's underlying claim is without merit and does not warrant further analysis pursuant to *Martinez*.

The petitioner alleged in Claim 8b4d that trial counsel were ineffective for failing to investigate and present evidence that the victims' back door was closed when the police were at

the house at 11:30 the night of the 911 call but ajar when the bodies were found the next day, which he said indicates that they were not killed until the morning after the 911 call. (DE #18, at 5–6.)  The court has previously determined that this claim was defaulted by never being raised in state court (DE #201, at 23, 24, 77 n.37), but it is subject to the same analysis and conclusion set forth above regarding the alarm clock claim.  The claim does not merit further review pursuant to *Martinez*.

In Claim 8c1, the petitioner alleged that counsel was ineffective for failing to investigate and present evidence of fingerprints not identified as his own that were found at the crime scene. (DE #18, at 6.)  The court found in its 2005 ruling that this claim had not been raised in state court and was procedurally defaulted. (DE #201, at 23–24, 79 n.38.)  The petitioner now argues that, if counsel had conducted a thorough investigation of the latent print evidence at the crime scene, they could have demonstrated that the prosecution's fingerprint witness, Johnny Hunter, was unreliable and could have shown that the presence of prints that were not his own "show[ed] someone else's guilt." (DE #297, at 12–17.)  The court has reviewed the petitioner's new evidence – the fingerprint analysis report of Kathleen Bright-Birnbaum – and disagrees with the petitioner's conclusions.

Sergeant Johnny Hunter testified at trial that only one print found at the crime scene was identified as the petitioner's: the bloody handprint on the sheet near Judy Smith's body. (DE #12, Add. 1, Bk. 6 of 9, Vol. XIV, pp. 2009–2010, 2023.)  He explained that the print bore 15 points of identification, compared to the minimum 8 points required by the FBI, and that there was "no doubt" that the print belonged to the petitioner. (*Id.*, pp. 2016–2018.)  Hunter said that all the other prints found in the home either matched the victims (which he testified would be expected, "because anytime you have a crime scene you're going to have fingerprints on that crime scene of the victim"), were insufficient for comparison, or did not match any known individual. (*Id.*, pp. 1993, 2021–2024.)  Bright-Birnbaum disagrees with Hunter's conclusions

15

about several of those prints.  She says that two prints identified as those of one resident victim were actually made by another resident victim and that several of the prints Hunter found insufficient for comparison were actually identifiable but did not match any known individual. (DE #297-1.)  She also identified two additional prints left by resident victims and several prints of the officers who investigated the crime scene. (*Id.*)  But establishing that the victims and others were in their own home at some point does nothing to show someone else's guilt, as the petitioner suggests, so none of the disagreements between Bright-Birnbaum and Hunter about the latent fingerprint evidence would have had any impact on the outcome of the petitioner's case. *Carter v. City of Detroit*, No. 11-15322, 2016 WL 319514, at *4 (E.D. Mich. Jan. 27, 2016), *aff'd*, 678 F. App'x 290 (6th Cir. 2017) (because unidentified prints do not preclude a defendant's presence at the same location, such evidence "is not exculpatory because it cannot be said that such evidence is inconsistent with the prosecution's case or [that it] tends to support the defendant's case").

The only print that was material to the petitioner's conviction was his bloody handprint on the sheet,[6] which neither Bright-Birnbaum's report nor any other evidence offered by the petitioner disputes.  The petitioner argues that disputing the accuracy of Hunter's analysis of the latent prints could have resulted in excluding him from testifying at trial.  Even accepting that leap, the fact that an expert that defense counsel consulted about the bloody handprint agreed that it was the petitioner's, *see Smith v. State*, 1998 WL 345353, at *15, 16, and the petitioner's inability to date to produce any conflicting expert opinion about that print suggest that the prosecution could easily have called another expert to testify that the bloody handprint belonged to the petitioner.  Because the petitioner cannot establish any prejudice in connection with his underlying IATC claim about the latent prints, the claim lacks the merit required for further consideration under *Martinez*.

---

[6] Indeed, counsel for the petitioner argued in this court in 2003 that "[t]he palm print was the most important piece of evidence presented to the jury." (DE #179, at 203.)

The petitioner alleged in Claim 8c5 that trial counsel were ineffective for failing to investigate and present evidence about unidentified foot prints and shoe prints on the ground outside the victims' house. (DE #18, at 7.) The court previously found this claim was not raised in state court and was therefore procedurally defaulted. (DE #201, at 23–24, 79 n.38.) Although the petitioner lists Claim 8c5 several times among the claims for which he seeks *Martinez* review (DE #297, at 10, 24, 25), he does not discuss the foot/shoe prints anywhere in his brief or submit any evidence that would establish that the underlying claim is substantial or that post-conviction counsel performed deficiently by not raising it. The petitioner has failed to establish that this claim warrants further review.

In Claim 8c6, the petitioner alleged that a broken knife found under the house after the murders would have created reasonable doubt about his guilt and that counsel was ineffective for failing to investigate and present evidence about the knife at trial. (DE #18, at 7.) This claim was exhausted and rejected by the TCCA in post-conviction proceedings in state court. *Smith v. State*, No. 01C01-9702-CR-00048, 1998 WL 345353, at *21–22 (Tenn. Crim. App. June 30, 1998.) Moreover, the court has already held a hearing and permitted the petitioner to offer new evidence pertaining to this claim, reached its own conclusion based on all of the evidence that the claim failed on its merits, and ruled that the TCCA's rejection of the claim was not unreasonable. (DE #201, at 80, 118–20.) *Martinez* does not authorize any reconsideration of this claim.

The petitioner alleged in Claim 8e3 that counsel were ineffective for failing to secure the services of a criminologist to develop evidence for use in cross-examining Sergeant Johnny Hunter about the omission from a crime scene drawing of a telephone that was off the hook in the victims' house.[7] (DE #18, at 9.) The court previously determined that this claim was

_____

[7] To the extent that the petitioner alleged more generally that trial counsel was ineffective for not using a criminologist to challenge the prosecution's theory of the crime scene or cross-examine Hunter about other matters, that claim was exhausted and rejected by the TCCA in post-conviction proceedings, *State*

17

procedurally defaulted. (DE #201, at 24, 83 n.40.)  Sergeant Hunter acknowledged at trial that the telephone was not indicated on the diagram and testified that some of the crime scene was just photographed, rather than being included in the diagram. (DE #12, Add. 1, Bk. 6 of 9, Vol. XIV, pp. 1945, 1957.)  He later testified about the condition and location of the telephone, as depicted in at least two photographs. (*Id.* at 1965, 1966–67.)  Despite listing 8e3 among the claims on which he seeks relief, the petitioner does not mention the crime scene drawing or the telephone anywhere in his brief and does not offer any evidence suggesting that the omission of the telephone from the drawing had any impact on the outcome of his case.  He has failed to establish that this claim warrants further review.

      B.  Petitioner's Claim That "Trial Counsel Ineffectively Failed To Present Exculpatory Evidence That Someone Else Committed The Offense, And That The Offense Was Drug-Related (Amended Petition ¶¶8a2, 8a3)."

The petitioner alleged in Claims 8a2 and 8a3 that trial counsel was ineffective for failing to investigate and present evidence that "a Black male was the perpetrator" and that "the murders were drug-related and/or motivated by robbery." (DE #18, at 3–4.)  He relies on two pieces of evidence in support of these claims.  First, he cites a police report indicating that a witness reported seeing a black male run from the victims' front yard to a nearby corner, where he stopped as if he was waiting for a bus, and that the same witness had seen the same man catch the bus at that corner about two weeks earlier. (DE #297-16.)  Second, he cites a second police report about a statement from a confidential informant that Judy Smith had recently stolen a car from a black male known as "Dead Leg," with whom Smith allegedly "had some type drug dealings or association" and who had been looking for her home, but that the informant did not know whether Dead Leg had ever found her home. (DE #297-17.)

The petitioner has not submitted any proof that further investigation of either of these facts would have led to additional exculpatory facts that could have been admitted at either trial

*v. Smith*, at *23–24, and this court previously found that that ruling was not unreasonable. (DE #201, at 84–85.)  The *Martinez* exception for procedurally defaulted claims has no impact on that determination.

or post-conviction, or any evidence about whether trial counsel or post-conviction counsel conducted that investigation, or why they omitted these facts from their presentations in state court. The petitioner has the burden of demonstrating that his counsels' actions were not the product of informed strategy. *Strickland*, 466 U.S. at 688–89. He has not carried that burden, nor has he submitted anything to indicate that he would be able to do so at a hearing.

Moreover, even if the court assumed deficient performance by counsel, neither of these new facts themselves would make a different outcome a reasonable likelihood in the petitioner's case. A victim's alleged dispute with another man, her alleged association with drugs, and a man's apparent dash to catch a bus simply do not compare to the enormous weight of the evidence against the petitioner, including: his threats to kill the victims and attempt to hire their murder; his bloody palm print next to one of the bodies; the 911 call in which a victim is heard in the background pleading with the petitioner by name; and strong circumstantial evidence that a leatherworking awl found at the scene and likely used in the murders belonged to him. *See State v. Smith*, 868 S.W.2d 561, 565–67 (Tenn. 1993). The petitioner cannot demonstrate any prejudice arising from his counsel's alleged ineffectiveness in Claims 8a2 and 8a3, so these claims do not merit further review pursuant to *Martinez*.

    C.  Petitioner's Claim That "Trial Counsel Ineffectively Failed To Object To Improper Jury Instructions (Amended Petition ¶¶8k1–8k4, 12c)."

In Claims 8k1–4 of his Amended Petition, the petitioner alleged that trial counsel was ineffective for failing to object to the trial court's guilt-phase jury instructions regarding the credibility of witnesses (8k1), the definitions of premeditation and deliberation (8k2), the evaluation of expert witnesses (8k3), and reasonable doubt (8k4). In claim 12c, he alleged that trial counsel was ineffective for failing to object to the sentencing-phase jury instructions regarding the "heinous, atrocious, or cruel" aggravating circumstance (12c1), the effect of mitigating evidence (12c2), the felony-murder aggravating circumstance (12c3), reasonable doubt (12c4), expert witnesses (12c5), the credibility of witnesses (12c6), the burden of proof to

show mitigating circumstances (12c7), and the requirement of a unanimous verdict (12c8). (DE #18, at 11, 21.)

The court is perplexed by the petitioner's blanket assertion that "[t]hese particular ineffectiveness claims now raised in these proceedings are subject to *Martinez*, as they were never raised by post-conviction counsel." (DE #297, at 26.) With the apparent exception of Claim 12c2, the court's 2005 memorandum opinion found most of these claims to be exhausted and addressed and rejected the merits, even of those it found to be defaulted. (DE #201, at 89–107.) Those determinations, therefore, do not require reconsideration pursuant to *Martinez*.

The court did previously conclude that Claim 12c2, that counsel failed to object to an erroneous instruction about the effect of mitigation evidence, had not been raised in state court and was therefore procedurally defaulted. (DE #201, at 28.) The petitioner did not expressly include that instruction on his list of instructions to which he claimed at post-conviction that trial counsel was ineffective for failing to object. (DE #14, Add. 12, Vol. 1, Verified Amended Petition at 9–10.) But he did allege that the trial court violated his federal constitutional rights by giving the instruction at issue (*id.*, Verified Amended Petition at 13), and the TCCA expressly considered counsel's effectiveness in connection with this instruction as well as others:

> Next, the petitioner contends that counsel was ineffective for failing to object to certain jury instructions given during the guilt and sentencing phases of the trial. Although the petitioner contends the jury instructions warrant reversal, he has failed to cite any relevant case law specifically holding these instructions erroneous. Below is a summary of the contested instructions, all of which have been upheld by the Tennessee Supreme Court: heinous, atrocious, or cruel aggravating circumstance, reasonable doubt, assessing credibility of witnesses, ***effect of mitigating evidence***, premeditation and deliberation, expert testimony, elements of underlying felony in felony murder. Accordingly, counsel's performance in this respect was adequate.

*Smith v. State*, No. 01C01-9702-CR-00048, 1998 WL 345353, at *26 (Tenn. Crim. App. June 30, 1998) (emphasis added; internal citations omitted).

Moreover, the petitioner's claim fails even under a de novo review. By the time of the court's previous ruling, it was clear that the petitioner's position was that the instruction in

question was objectionable because it only allowed consideration of mental or emotional disturbance as a mitigating factor if it was "extreme." (DE #201, at 28.) The trial court instructions to the jury prior to its sentencing deliberations included the following:

> In arriving at this determination, you are authorized to weigh and consider any mitigating circumstances and any of the statutory aggravating circumstances which may have been raised by the evidence throughout the entire course of this trial, including the guilt-finding phase or the sentencing phase or both.
>
> . . .
>
> In arriving at the punishment, the jury shall consider, as heretofore indicated, any mitigating circumstances which shall include, but not be limited to the following:
>
> . . .
>
> (2) The murder was committed while the defendant was under the influence of extreme mental or emotional disturbance;
>
> . . .
>
> (4) Any aspect of the defendant's character or record or any aspect of the circumstances of the offense favorable to the defendant which is supported by the evidence.

(DE #14, Add. 13, Ex. 13, Tr. at 3266, 3279–80.)

The United States Supreme Court has rejected the claim that reference to a statutory mitigating factor for extreme mental or emotion disturbance precludes consideration of lesser degrees of disturbance:

> The trial judge gave the jury examples of mitigating circumstances that it was entitled to consider, essentially the list of factors contained in § 9711(e). Among these, the judge stated that the jury was allowed to consider whether petitioner was affected by an "extreme" mental or emotional disturbance, whether petitioner was "substantially" impaired from appreciating his conduct, or whether petitioner acted under "extreme" duress. Petitioner argues that these instructions impermissibly precluded the jury's consideration of lesser degrees of disturbance, impairment, or duress. This claim bears scant relation to the mandatory aspect of Pennsylvania's statute, but in any event we reject it. The judge at petitioner's trial made clear to the jury that these were merely items it could consider, and that it was also entitled to consider "any other mitigating matter concerning the character or record of the defendant, or the circumstances of his offense." App. 12–13. This instruction fully complied with the requirements of Lockett [*v. Ohio*, 438 U.S. 586 (1978)] and *Penry* [*v. Lynaugh*, 492 U.S. 302 (1989), *abrogated on other grounds by Atkins v. Virginia*, 536 U.S. 304 (2002)].

*Blystone v. Pennsylvania*, 494 U.S. 299, 308 (1990). As in *Blystone*, the instructions in this case made clear that the statutory mitigating factor of extreme disturbance was just one of a

non-exclusive list of potential factors and that the jury was free to consider any other mitigating fact that appeared from the record. Because this claim clearly fails on its merits, no further consideration of the *Martinez* factors is required.

    D.  Petitioner's Claim That "Trial Counsel Ineffectively Failed To Investigate And Present Evidence At Sentencing (Amended Petition ¶12a)."

Petitioner asserted in Claim 12a of his Amended Petition that trial counsel were ineffective at sentencing "[f]or failing to fully investigate and present evidence of Oscar Smith's mental health, including full exposition of available mitigating evidence and mental health problems in his family," including five specific examples of actual or potential mental health problems experienced by the petitioner, his father, his brother and his son. (DE #18, at 20–21.)

In his Verified Amended Petition for Post Conviction Relief filed through counsel on May 1, 1996, in the Criminal Court for Davidson County, the petitioner asserted that counsel had been ineffective at sentencing for failing to "seek a mitigation specialist . . . to present to the jury all necessary mitigation evidence" (Claim II.C), failing to "properly investigate [his] background in order to find all appropriate mitigation evidence" (Claim II.D), and failing to "introduce all appropriate mitigating evidence necessary for the jury in rendering its decision in this case" (Claim II.E). (DE #14, Add. 12, Vol. 1, Verified Amended Petition at 10.) After a lengthy evidentiary hearing, the post-conviction trial court denied relief on the merits of that claim:

> Petitioner alleges that counsel was ineffective in not properly investigating petitioner's background to find all appropriate mitigation evidence. Mr. Newman and Mr. Dean [the petitioner's trial counsel] both testified that petitioner did not want counsel to raise mental health or family background issues, although Mr. Newman testified that petitioner ultimately changed his mind as to the use of family background. The Court is of the opinion that petitioner has not presented mitigation evidence which should have been presented by counsel and which would likely have changed the result of the trial, and this ground is without merit.

(DE #14, Add. 12, Vol. 1, Order at 11.) The petitioner appealed the denial of post-conviction relief but did not challenge the ruling on the IATC-mitigation claim. (DE #14, Add. 14, Vol. 2,

Brief and Argument of Appellant).  Accordingly, this court dismissed Claim 12a as procedurally defaulted. (DE #201, at 28, 37, 42–43.)

Because this claim was defaulted on post-conviction appeal, rather than as the result of ineffective assistance at the initial-review stage of post-conviction proceedings, *Martinez* does not authorize any reconsideration of it. *West v. Carpenter*, 790 F.3d 693, 698–99 (6th Cir. 2015.)  Relying on Ninth Circuit precedent, the petitioner argues that Claim 12a is actually a new claim that was never raised in state court "[a]s [it] is currently presented." (DE #297, at 29–30.)  But it is in fact the same claim litigated at the post-conviction hearing – that trial counsel ineffectively failed to investigate and present available mitigation evidence – with new facts raised in support of it.  Like *Pinholster*, *West*, *Escamilla* and *Rhines* – and unlike *Martinez* – the petitioner had his day in court on this claim.  As the Sixth Circuit instructed in *West*, even if the failure to assert these particular facts on that day resulted in the rejection of a potentially meritorious claim for reasons "traceable directly to counsel's deficient advocacy," that deficiency did not cause the *default* of the claim in order to trigger *Martinez*'s application. *West*, 790 F.3d at 698–99.  The default occurred when the petitioner failed to appeal the rejection of his claim, which is a stage of proceedings to which *Martinez* does not apply: "The holding in this case does not concern attorney errors in other kinds of proceedings, ***including appeals from initial-review collateral proceedings***[.]" *Martinez v. Ryan*, 566 U.S. 1, 16 (2012) (emphasis added). In essence, the petitioner is attempting to do the same thing that the Supreme Court held Pinholster was prohibited from doing – add new mitigation evidence that trial counsel was allegedly ineffective for failing to present[8] – but with the added twist that he also defaulted the

---

[8] At Pinholster's state habeas proceeding, his counsel asserted that trial counsel had been ineffective at sentencing by failing to adequately investigate and present mitigating evidence, but the state court denied that claim on its merits. *Pinholster*, 563 U.S. at 177.  Pinholster reasserted the exhausted penalty-phase IATC claim in his federal habeas petition, and this time presented the testimony of two new medical experts who testified to diagnoses of the petitioner that had not been presented in state court. *Id.* at 179. The Supreme Court held that it was error for the federal court to consider that new evidence because AEDPA limits the review of exhausted claims to the state-court record. *Id.* at 181–82.

original claim on post-conviction appeal.  He is not entitled to relief on either basis.

IV. CONCLUSION

As discussed above, it is clear from the evidence in the record that all of the claims raised in the petitioner's brief (DE #297) are either too lacking in merit to warrant relief pursuant to *Martinez* or are not subject to *Martinez* review at all.  The petitioner clearly felt free to submit new evidence in the form of exhibits to his brief (DE ## 297-1–297-29), which the court has considered except as otherwise noted above.  Because the petitioner has not identified any additional evidence that could only be developed at a hearing, the court finds that no such hearing is required to resolve this matter. *See Segundo v. Davis*, 831 F.3d 345, 351 (2016) (holding that the district court did not abuse its discretion in denying a hearing to determine whether claim satisfied *Martinez* because the record contained sufficient facts to make that determination).  The court will deny the requested relief and dismiss this action.

_____
Aleta A. Trauger
United States District Judge